United States Court of Appeals
Fifth Circuit

**F I L E D**

July 25, 2006

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

No. 04-10890

**SANDRA J. BEASLEY,**

**Plaintiff-Appellant,**

**versus**

**JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY**
**ADMINISTRATION,**

**Defendant-Appellee.**

**Appeal from the United States District Court**
**for the Northern District of Texas**
**(3:03-CV-1430-G)**

Before BARKSDALE, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Sandra Beasley appeals the district court's affirmance of a benefits-denial by the Commissioner of the Social Security Administration (SSA). In rejecting Beasley's treating physician's opinion, the administrative law judge (ALJ) apparently failed to apply 20 C.F.R. § 404.1527(d)(2) (requiring the SSA to give substantial weight to treating physician's opinion or, in the alternative, apply the factors listed in other subparts). **VACATED** and **REMANDED**.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

In April 1997, Beasley filed for benefits under Titles II and XVI of the Social Security Act as a result of, *inter alia*, depression, fibromyalgia, bipolar disorder, and hypertension, with a 1 March 1996 disability onset date. (In February 2000, she amended that date to 1 April 1999, as discussed *infra*.) After the SSA in April 1999 denied her claims, Beasley requested *de novo* review by an ALJ.

In February 2000, after conducting the five-step analysis for determining whether a claimant has a disability, pursuant to 20 C.F.R. § 404.1520, the ALJ found: (1) Beasley continued to work as a child-care provider through August 1998, but did not meet the criteria for substantial gainful activity; (2) she had severe impairments of arthritis, fibromyalgia, and hypertension (did *not* include depression); (3) these impairments did not meet or equal listed impairments; (4) she retained "the residual functional capacity to perform a light level of work" but could not perform her past relevant work; and (5) she had the "capacity to perform a significant number of ... jobs existing in the national and local economies". As a result, the ALJ denied benefits.

The Appeals Council denied Beasley's timely request for review. Therefore, the ALJ's decision became the Commissioner's final decision. *E.g., **Crowley v. Apfel**,* 197 F.3d 194, 195 (5th Cir. 1999).

2

Beasley filed this action pursuant to 42 U.S.C. § 405(g), claiming: (1) the ALJ's finding that her mental impairments were not severe was *not* supported by substantial evidence; and (2) the ALJ failed to apply the appropriate legal standard under 20 C.F.R. § 404.1527(d)(2) to weigh the opinion of her treating psychiatrist, Dr. Graves. In recommending that the ALJ applied the correct legal standard to give little or no weight to Dr. Graves as Beasley's treating physician, the magistrate judge noted: the ALJ was required to consider six factors provided in § 404.1527(d)(2); and failure to consider them is grounds for reversal. But, because "the ALJ understood the nature and extent of the treating relationship" and "explicitly determined that Dr. Graves's opinion was not adequately supported by the medical record", the magistrate judge recommended: the ALJ gave proper weight to Dr. Graves' opinion; and substantial evidence supported the ALJ's determination that Beasley's mental impairment was not severe.

Beasley timely filed objections to the magistrate judge's report and recommendation. The district court overruled those objections and adopted it.

## II.

Like the district court, our court reviews the Commissioner's benefits-denial only to determine whether: (1) substantial evidence supports the final decision; and (2) the proper legal

3

standards were used to evaluate the evidence. *E.g., **Newton v. Apfel***, 209 F.3d 448, 452 (5th Cir. 2000).

Unlike in district court, Beasley does *not* claim the ALJ's decision is not supported by substantial evidence. Instead, as she did in district court, Beasley claims the ALJ failed to apply the required § 404.1527(d)(2) standards, resulting in the rejection of the opinion of her treating specialist, Dr. Graves. Beasley maintains: the ALJ relied exclusively on a state agency's non-examining medical consultant, who evaluated her medical records; and this reliance was in error because that expert's review was in November 1998 — several months *before* April 1999, when Beasley claimed she became disabled and had stopped working (the amended disability onset date). (In November 1998, the SSA initially denied her claims; in April 1999, it denied her request for reconsideration.) Accordingly, Beasley contends: had the ALJ, in 2000, analyzed the § 404.1527(d)(2) factors, Dr. Graves' opinion would be entitled to more weight than the non-examining medical consultant's opinion; therefore, the ALJ would have to find Beasley's mental impairments were severe; and it is less likely benefits could have been denied.

As noted, a claimant seeking Social Security benefits must show: (1) she is not engaged in substantial gainful work activity; (2) she suffers a severe impairment; (3) that impairment meets or equals one listed in Appendix 1 of the Regulations; and (4) it

4

prevents the claimant's performing her past work.  Upon the claimant's doing so, the burden shifts to the Commissioner to show the impairment does not prevent the claimant from doing other work available in the national and local economies.  20 C.F.R. § 404.1520(a)(4); *see also* **Newton**, 209 F.3d at 453.

In making these findings, an ALJ must give a treating physician's opinion "controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence'". **Martinez v. Chater**, 64 F.3d 172, 176 (5th Cir. 1995) (quoting 20 C.F.R. § 404.1527(d)(2) (alteration in original)).  Furthermore, a specialist's opinion is afforded greater weight than a generalist's.  *See* **Paul v. Shalala**, 29 F.3d 208, 211 (5th Cir. 1994), *overruled on other grounds by* **Sims v. Apfel**, 530 U.S. 103 (2000).  As reflected above, a treating physician's opinion may be given little or no weight "when the evidence supports a contrary conclusion".  **Newton**, 209 F.3d at 455 (internal quotation marks omitted).  The ALJ must "always give good reasons ... for the weight [it affords the opinion]", 20 C.F.R. § 404.1527(d)(2), and must show good cause when giving that opinion little or no weight, **Newton**, 209 F.3d at 455.

Pursuant to § 404.1527(d)(2), to determine how much weight to afford such an opinion, the ALJ must consider:  (1) the physician's length of treatment of the claimant; (2) the physician's frequency

5

of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *See also* **id.** at 456. Furthermore, Social Security Ruling (SSR) 96-2p provides:

> [A] finding that a treating source medical opinion is *not* well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," *not* that the opinion should be rejected. *Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527.*

(Emphasis added.)

The ALJ properly placed the burden on Beasley to show: (1) she was not working enough to meet the substantial-gainful-activity standard; (2) she suffers a severe impairment; (3) it meets or equals a recognized impairment, and (4) it prevents her from doing her past work. In making these findings, the ALJ completed a residual functional capacity analysis to determine whether Beasley could perform her past relevant and/or some lesser level of work. He found Beasley

> retains the residual functional capacity to perform a light level of work restricting her to lifting and/or carrying no more than 20 pounds occasionally, 10 pounds frequently; standing and/or walking no more than 6 hours in an 8 hour day; sitting no more than 6 hours

6

in an 8 hour day; no limitations on pushing or pulling ... ; and the non-exertional abilities of understanding, remembering, and carrying out simple instructions; making judgments that are commensurate with the functions of unskilled work — i.e., simple work-related decisions; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting.

The ALJ based his analysis on Beasley's medical evaluations by her treating physicians, Dr. Pearson (October 1998) and Dr. Graves (December 1998 - March 2000; the ALJ erroneously stated the first treatment date as *August 1999*, instead of *December 1998*), the evaluation of Dr. Pearson's examination notes by the state agency's non-examining medical consultant, and Beasley's testimony before the ALJ.

With respect to Beasley's mental impairments, the ALJ found she had "reported to [Dr. Pearson], that she could not work due to mood swings ... and a long history of 'bad nerves' and anxiety". Additionally, Dr. Pearson's November 1998 records reflect Beasley reported she had suffered auditory hallucinations, but was able to live alone and care for herself independently with minimal help. On the other hand, the ALJ found Beasley had reported to Dr. Graves in 1999 and 2000 that she had suffered no such hallucinations.

The ALJ rejected Beasley's testimony that she has significant daily pain and symptoms of depression, finding "the medical evidence ... reflects a much higher level of daily functioning". Likewise, the ALJ disregarded Dr. Pearson's February 2000

7

supplemental letter opinion, based on his October 1998 examination of Beasley, that her mental impairment created a "moderate to marked restriction of activities of daily living, ... [and] moderate limitations and a few marked limitations in certain specific areas related to understanding and memory, sustained concentration and persistence, social interaction and adaptation". Finally, the ALJ rejected Dr. Graves' opinion that Beasley's depression prevented her from working, finding it was "inconsistent with and unsupported by both [Dr. Graves'] own medical evidence and the balance of the record".

The ALJ adopted the evaluation of the state agency's non-examining medical consultant that Beasley's mental impairments were not severe and "caused only a slight restriction of activities of daily living, ... and never caused episodes of deterioration or decompensation in work or a work-like setting". Furthermore, the ALJ concluded Beasley's claims about her functional limitations and restrictions on her daily life were "exaggerated, lack corroboration or substantiation ... and, as such, [were] not credible".

The ALJ cited SSR 96-2p for the requirement that Dr. Graves' opinion must be given full consideration. But, in his decision, the ALJ did *not* mention the § 404.1527(d) factors. Nor, based on our review of that decision, do we share the confidence of the

district court that the ALJ included all of those required factors in his analysis.

"[A]bsent reliable medical evidence from a treating or examining physician controverting [Dr. Graves' opinion], an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a *detailed analysis* of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)". ***Newton***, 209 F.3d at 453 (second emphasis added). Dr. Pearson's opinion of Beasley's depression does *not* controvert Dr. Graves' opinion — indeed, it provides support that Beasley's depression impairs her ability to work. And, although the state agency's medical consultant's opinion controverts Dr. Graves' opinion, that consultant never examined or treated Beasley.

In sum, the above requisite "detailed analysis" for the § 404.1527(d)(2) factors is lacking. Accordingly, Beasley's substantial rights were affected by the ALJ's apparent failure to perform that analysis. ***Id***.

### III.

For the foregoing reasons, the judgment is **VACATED** and this matter is **REMANDED** to district court for remand to the Commissioner for further proceedings consistent with this opinion.

***VACATED AND REMANDED***

9