**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**January 30, 2004**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 03-50201

_____

BIG BEND HOSPITAL CORP., doing business as
Big Bend Regional Hospital Medical Center,

Plaintiff-Appellant,

versus

TOMMY G. THOMPSON, SECRETARY, DEPARTMENT
OF HEALTH & HUMAN SERVICES,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. P-02-CV-30

_____

Before JOLLY, HIGGINBOTHAM, and DeMOSS, Circuit Judges.

PER CURIAM:[*]

Big Bend Hospital Corporation ("Big Bend") appeals the district court's grant of summary judgment in favor of the Secretary of the Department of Health and Human Services (the "Secretary" of "HHS"). Big Bend contends that the HHS Departmental Appeals Board ("DAB") incorrectly determined February 3, 2000, to be the effective date of participation in the Medicare program, and that the Administrative Law Judge ("ALJ") improperly denied Big Bend an in-person administrative hearing to contest the accuracy of

_____

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

this date.  We hold that the effective date determination was supported by substantial evidence and that the DAB applied the appropriate legal standard under the relevant statutes and regulations.  We further hold that an evidentiary hearing would have been futile.  We therefore AFFIRM the summary judgment.

I

In 1999, Big Bend applied to participate in the Medicare program, which is administered by the Centers for Medicare and Medicaid Services ("CMS"), an HHS agency.  Medicare regulations require CMS to enter into agreements with state survey agencies, which make recommendations to CMS as to whether surveyed facilities are Medicare compliant and deserve certification.  42 C.F.R. § 488.10 (2004).[1]  CMS has such an agreement with the Texas Department of Health ("TDH").

TDH completed an initial certification survey on October 7, 1999 ("October 7 Survey"), and, after concluding that Big Bend failed to meet multiple conditions, recommended that CMS deny Big Bend's application.  Three weeks later, TDH conducted a second certification survey ("October 27 Survey"), found Big Bend in compliance, and recommended approval of Big Bend's application.

CMS, apparently skeptical that the deficiencies noted in the October 7 Survey could have been rectified so quickly, made an

---

[1]The current versions of the relevant statutes and regulations are the same as those in effect at the time of the operative facts of this case.

unannounced visit to Big Bend to conduct another survey ("December 7 Survey"). The federal surveyors found serious deficiencies, similar to the deficiencies noted in the October 7 Survey, but before the survey was completed Big Bend officials asked CMS to end the survey. Chief Executive Officer David Conejo then submitted a "formal request to withdraw" from the survey process ("December 7 Letter"). CMS confirmed Big Bend's withdrawal in writing ("December 20 Letter"), and informed Big Bend that it could reapply for certification at any time. Neither Conejo nor any other Big Bend official objected to CMS' characterization of the December 7 Letter as a withdrawal from the certification process.

In early January 2000, Conejo notified CMS that Big Bend would be prepared for a survey by January 12, and requested a new survey at that time. On February 3, Big Bend was re-surveyed by a team of officials from TDH and CMS ("February 3 Survey"), who concluded that Big Bend complied with Medicare requirements and recommended certification. CMS accepted the recommendation and certified Big Bend for Medicare participation effective February 3, 2000.

Big Bend, wishing to claim Medicare reimbursements for services rendered before February 3, disagreed with the certification date. It contended that the proper date was October 27, 1999, when TDH surveyors originally had recommended certification. CMS denied Big Bend's request for reconsideration. After denying an in-person hearing, the ALJ ruled that, by both withdrawing from the December 7 Survey (which, if successful, would

3

have had the effect of validating the October 27 Survey) and asking for a new "certification" survey, Big Bend had abandoned its claim to an effective date of October 27. The DAB affirmed the ALJ's decision, concluding that, whatever Big Bend's intent may have been, the December 7 Letter legally constituted a withdrawal from the certification process.

Invoking the judicial review provision of the Medicare Act, 42 U.S.C. § 1395cc(h)(1) (2004), Big Bend appealed the DAB's decision to the district court, which granted summary judgment to the Secretary. Big Bend filed a timely notice of appeal.

II

We review grants of summary judgment de novo, applying the same standards as the district court. Hall v. Gillman, Inc., 81 F.3d 35, 36-37 (5th Cir. 1996). Notwithstanding the various subsidiary arguments made by Big Bend, our review is limited to a determination as to whether DAB's findings of fact are supported by substantial evidence and whether the DAB applied the proper legal standards in reaching its decision. 42 U.S.C. § 405(g) (2004); Estate of Morris v. Shalala, 207 F.3d 744, 745 (5th Cir. 2000).

The ALJ's conclusion, adopted by the DAB, that the December 7 Letter constituted a withdrawal from the certification process conducted in October 1999 is supported by substantial evidence (which concededly may be subject to more than one plausible interpretation), including Big Bend's failure to object to the December 20 Letter and Conejo's request for a new certification

4

survey in January 2000.[2]  The legal conclusion drawn from this evidence -- that Big Bend was effectively certified on the date that the second certification process was successfully completed, February 3, 2000 -- is simply not inconsistent with or contrary to the Medicare statute, 42 U.S.C. § 1395 et seq. (2004), and its accompanying regulations, 42 C.F.R. § 488 et seq. (2004).[3]  As such, we uphold the DAB's determination of the effective date of Big Bend's participation in the Medicare program.

Further, the evidence that Big Bend would submit at an evidentiary hearing (the essence of which is that Big Bend was in compliance as of October 27 and that, in any event, Conejo did not intend to withdraw Big Bend from the certification process on December 7) is irrelevant if the December 7 Letter constitutes a withdrawal from the October 1999 certification process.  We have upheld the DAB's conclusion as to the legal effect of the December 7 Letter, and thus it follows that an evidentiary hearing clearly would have been an empty formalism and a waste of administrative resources.  We hold, therefore, that the DAB correctly interpreted

---

[2]We have defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." Harris v. Apfel, 209 F.3d 413, 417 (5th Cir. 2000) (citations and internal quotation marks omitted).

[3]Federal courts generally defer to the Secretary's interpretation of Medicare legislation and its implementing regulations, unless the interpretation is "plainly erroneous or inconsistent" with that statutory authority. Harris Cty. Hosp. Dist. v. Shalala, 64 F.3d 220, 221 (5th Cir. 1995).

its regulations as not requiring such a hearing.  <u>Cf</u>. <u>Weinberger v. Hynson, Westcott & Dunning, Inc.</u>, 412 U.S. 609, 617 (1973) (reaching the same conclusion with respect to FDA regulations); <u>Panhandle Producers & Royalty Owners Ass'n v. Econ. Regulatory Admin.</u>, 847 F.2d 1168, 1178 (5th Cir. 1988) (Department of Energy regulations).[4]

## III

Accordingly, the judgment of the district court is

AFFIRMED.

---

[4]Our sister circuits have also held that an agency's appellate process may either deny a hearing request or grant summary judgment to the agency when the appellant cannot demonstrate, by relevant evidence, the existence of a genuine issue of material fact to be resolved during the hearing.  <u>See</u>, <u>e.g.</u>, <u>J.D. v. Pawlet Sch. Dist.</u>, 224 F.3d 60, 68-69 (2d Cir. 2000); <u>P.R. Aqueduct & Sewer Auth. v. EPA</u>, 35 F.3d 600, 606 (1st Cir. 1994); <u>Travers v. Shalala</u>, 20 F.3d 993, 998 (9th Cir. 1994); <u>Veg-Mix, Inc. v. U.S. Dept. of Agric.</u>, 832 F.2d 601, 607 (D.C. Cir. 1987).