# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 5, 2021

Lyle W. Cayce
Clerk

No. 21-60225

KATHRYN GOODWIN,

*Plaintiff—Appellant*,

*versus*

KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 1:20-cv-38

Before HIGGINBOTHAM, SMITH, and HO, *Circuit Judges*.

PER CURIAM:*

Kathryn Goodwin appeals the final administrative denial of her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423(d). In her application, Goodwin alleged disability beginning January 15, 2017, as a result of the following physical

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

conditions: back surgery, knee replacement surgery, high blood pressure, pain, depression, and acid reflux. After Goodwin's application was denied, an administrative hearing was held at her request on January 30, 2019. At that hearing, Goodwin was represented by counsel and provided testimony, along with her husband and an impartial vocational expert, regarding the nature of Goodwin's physical limitations, her past relevant work, and the feasibility of her working in the future. The administrative law judge subsequently issued another denial of Goodwin's application, finding that she is not disabled as defined by sections 216(i) and 223(d) of the Social Security Act. The Appeals Council of the Social Security Administration declined to review the ALJ's denial, making it the Commissioner's final administrative decision. Goodwin then requested judicial review. The district court affirmed, and Goodwin timely appealed under 28 U.S.C. § 1291.

The Commissioner's final administrative decision to deny disability benefits under 42 U.S.C. § 405(g) is granted great deference and will only be reversed if the decision is not supported by substantial evidence in the record or is based on an error of law. *See*, *e.g.*, *Randall v. Astrue*, 570 F.3d 651, 655 (5th Cir. 2009); *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000); *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). Under this standard, "[t]he agency's findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (citations and quotations omitted). "Substantial evidence" requires "more than a scintilla [of evidence], but it need not be a preponderance." *Leggett*, 67 F.3d at 564 (*quoting Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)).

The doctrine of harmless error applies to administrative rulings. *See Shinseki v. Sanders*, 556 U.S. 396, 407–08 (2009). We will not reverse an

administrative judgment unless the substantive rights of a party have been affected. *See*, *e.g.*, *Jones v. Astrue*, 691 F.3d 730, 734 (5th Cir. 2012); *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007); *Castillo v. Barnhart*, 325 F.3d 550, 552 (5th Cir. 2003).

The primary question we must address here is whether the ALJ's misunderstanding of a portion of the medical findings by the state agency medical consultant constitutes reversible error. For the reasons discussed below, we find that it does not.

In response to Goodwin's application, the state agency medical consultant, Dr. William Hand, reviewed the medical evidence of record to determine Goodwin's residual functional capacity. Based on his review, Dr. Hand determined that although Goodwin suffers from various physical limitations, she is not disabled as defined by the Social Security Act. For instance, among other things, Dr. Hand specifically found that Goodwin is capable of occasionally lifting and carrying up to twenty pounds, frequently lifting and carrying up to ten pounds, standing and walking for up to two hours in an eight-hour workday, sitting for a total of approximately six hours in an eight-hour workday, and occasionally climbing stairs, stooping, kneeling, and crouching.

During Goodwin's administrative hearing on January 30, 2019, vocational expert Brenda White was called to testify regarding the nature of Goodwin's past relevant work and whether an individual with Goodwin's physical limitations could continue to perform in that capacity. White based her testimony on a review of the record and her professional expertise. Goodwin did not object to White's testimony nor to her classification of Goodwin's past relevant work as a background investigator, as described in the *Dictionary of Occupational Titles* (*DOT*) code 241.267-030, and real estate agent, as described in *DOT* code 250.257-018. White opined that an

individual matching the characterization in Dr. Hand's assessment is able to work as a background investigator.

The Social Security Administration has established a five-step sequential evaluation process to determine whether a claimant is qualified to receive Social Security disability benefits. 20 C.F.R. § 404.1520(a). If it is determined that a claimant is or is not disabled at any step in the evaluation process, the evaluation is over and does not proceed to the next step. The five steps require analysis of the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a "severe" medically determinable impairment or combination of impairments; (3) whether that severity rises to a level that medically equals the criteria of an impairment listed within Appendix 1 of the regulation; (4) whether the claimant has the residual functional capacity to perform her past relevant work from within the last 15 years; and (5) whether the claimant is capable of performing any other work, considering her residual functional capacity, age, education, and work experience. *Id.*

Based on the assessment by Dr. Hand and testimony of the vocational expert, the ALJ found that Goodwin is capable of performing the full range of "light work" as defined by the Social Security Administration. *See* Social Security Ruling (SSR) 83-10, 1983 WL 31251. This would include her past work as either a real estate agent or background investigator. Accordingly, the ALJ concluded that Goodwin fails to satisfy the disability requirements at step 4.

In reaching this conclusion, the ALJ misunderstood one of Dr. Hand's findings. While Dr. Hand determined that Goodwin was capable of standing or walking for up to *two* hours per workday, as consistent with sedentary exertion, the ALJ mistakenly read his assessment to have found that Goodwin

is capable of standing or walking for up to *six* hours per workday, as consistent with light exertion.

But this error is not reversible.  Had the ALJ correctly applied Dr. Hand's assessment to find that Goodwin is capable of standing or walking for up to only two hours per workday, this would still qualify her to perform "sedentary work."  *See* SSR 83-10, 1983 WL 31251.  As White testified during the administrative hearing, Goodwin's past work as background investigator is defined as sedentary work under DOT code 241.267-030.  This description matches the one provided by Goodwin in her application to the Social Security Administration, and she did not object to White's characterization of it as such during her administrative hearing.  Consequently, even in the absence of the ALJ's error, Goodwin's application still would have failed to satisfy the disability requirements at step 4 of the evaluation process on the basis of Dr. Hand's findings and White's testimony.

Goodwin argues that the ALJ also erred in relying on Dr. Hand's assessment rather than that of her own physician, Dr. Edwards.  But Dr. Edwards's assessments also support a finding that she is capable of sedentary work.  On June 12, 2017, roughly five months after the alleged onset of Goodwin's disability, Dr. Edwards evaluated her and concluded that:

> She can do sedentary work with some limitations on that. . . .
> Once again, she is disabled, but not completely disabled.  She
> has severe limitations and restrictions on what she can do.  I am
> not convinced that she will be able to pursue employment [at]
> an office type setting; however, if she had the opportunity to
> pursue gainful employment [at] her home environment where
> she can have her restrictions in combinations better managed.
> She will likely do really, really well with that.

This is the only medical assessment from Dr. Edwards after the alleged onset of Goodwin's disability and before the Commissioner's denial of her application. While Dr. Edwards did not make any new clinical findings at that appointment, his evaluation similarly supports a finding that Goodwin can perform sedentary work with certain limitations. This interpretation of Dr. Edwards's valuation is corroborated by White's testimony at the administrative hearing on January 30, 2019. At that hearing, White was asked a series of hypotheticals based on the distinct assessments by Dr. Hand and Dr. Edwards. White concluded that Goodwin's past work as a background investigator would remain available to an individual who met the physical limitations and general characterization provided by either Dr. Hand or Dr. Edwards.

For these reasons, we affirm.